LAW OFFICE OF
**PETER A. ROMERO**

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

December 20, 2021

*VIA ECF*
Hon. Brian R. Martinotti
United States District Judge
United States District Court
District of New Jersey
50 Walnut Street
Newark, New Jersey 11722

    Re:    *Darwin Romero Santos, et al. v.* SB Capital Group II LLC
            Docket No.: 20-cv-06987 (BRM) (ESK)

Dear Judge Martinotti:

       This firm represents the Plaintiff, Darwin Romero Santos, and opt-in Plaintiffs Adam Cox, Bryton Barnes, Ines Zabala, Miguel Armento, and Pablo Davila (collectively as "Plaintiffs"), who brought the above-referenced matter against Defendant SB Capital Group II LLC, their former employer.[1] Plaintiffs bring claims for alleged unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), the New Jersey Wage and Hour Law, and the New Jersey Wage Payment Law, and the Pennsylvania Minimum Wage Act. D.E. 1. Additionally, absent resolution, the opt-in Plaintiffs would have amended their Complaint to assert violations of state wage and hour laws from a variety of other states across the United States for particular opt-in Plaintiffs. The parties have reached a resolution of this action. Accordingly, Plaintiffs now submit this motion for approval to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiffs' FLSA claims.[2] The parties' Joint Stipulation of Settlement and Release (the "Agreement") is attached as Exhibit A.

**I.**    **Procedural History**

       This matter was submitted to mediation before Giulio Zanolla, an experienced mediator who commonly handles matters involving wage and hour disputes. After exchanging relevant discovery, Mediator Zanolla conducted a mediation with the parties, during which the parties reached a settlement in principle following contentious, arms' length

---

[1] Opt-in Plaintiffs Christopher Martinez, and Andrew S. Sandoval have not participated in this action or settlement. Within the next several business days, Plaintiffs' counsel will be submitting a motion to withdraw as counsel of record for Mr. Sandoval and a motion to dismiss claims without prejudice under Fed. R. Civ. P. 41 or, alternatively, a motion to withdraw as counsel of record for Mr. Martinez.

[2] The parties do not seek the Court's approval with respect to the settlement of Plaintiffs' non-FLSA claims as there is no requirement for the Court to do so. However, although non-FLSA claims do not require the Court's approval, the parties' settlement agreement, attached as Exhibit A, includes the resolution of all of the claims that were or could have been asserted in this lawsuit.

6656926

LAW OFFICE OF PETER A. ROMERO PLLC   •   LABOR AND EMPLOYMENT LITIGATION
490 Wheeler Road, Suite 250, Hauppauge, New York 11788   •   (631) 257-5588   •   overtimelawny.com

negotiations. Thereafter, the parties negotiated the terms of their formal settlement agreement.

The settlement agreement between the Plaintiffs and the Defendant provide for payment of a gross sum of $87,500.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiffs will receive a total of $55,290.00, allotted on a *pro rata* basis according to each individual's assessed alleged damages, and Plaintiffs' counsel will receive a total sum of $32,210.00, consisting of $27,645.00 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $4,565.00 for litigation costs.

## I.  **Legal Standard**

Although the Third Circuit has yet to address the question of whether wage claims under the FLSA may be settled without court approval, "district courts within the Circuit have followed the approach endorsed by a majority of courts and assumed that judicial approval is necessary." *See Lyons v. Gerhard's Inc.*, Docket No. 14-cv-06693, 2015 U.S. Dist. LEXIS 92348, at *6 n.1 (E.D. Pa. July 15, 2015). When "employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Rabbenou v. Dayan Foods, Ltd.*, Docket No. 17-cv-1330, 2017 U.S. Dist. LEXIS 122055, *2 (D.N.J. Aug. 3, 2017) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also Morales v. PepsiCo, Inc.,* Docket No. 11-cv-05275; 2012 U.S. Dist. LEXIS 35284, *1 (D.N.J. Mar. 14 2012)).

District courts in the Third Circuit have held that FLSA claims can be settled in two ways: 1) with the Department of Labor supervising the payment of unpaid minimum wages or overtime compensation pursuant to 29 U.S.C. § 216(c); or (2) with the district court's approval of a settlement under 29. U.S.C. § 216(b)." *Davis v. Essex County*, Docket No. 14-1112, 2015 WL 7761062, at *2 (D.N.J., Dec. 1, 2015) (citing *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 at *18 (D.N.J. Apr. 8 2011); and *Lynn's Food Stores, Inc.*, 679 F.2d at 1354), and *Bettger v. Crossmark, Inc.*, Docket No. 13-2030, 2015 WL 279754 at * 3 (M.D. Pa., Jan. 22. 2015)); *see also Brumley v. Camin Cargo Contro, Inc.*, 2012 WL 1019337, at * 1 (D.N.J., Mar. 26, 2012).

[A] district court "may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Rabbenou*, 2017 U.S. Dist. LEXIS 122055 at *2; *see also Gabrielyan v. S.O. Rose Apts. LLC,* 2015 U.S. Dist. LEXIS 135615 at *3-4; *Rogers v. Momeni, Inc.*, 2021 WL 3619740, at *1 (D.N.J. Aug. 13, 2021) (citing *Brumley*, 2012 WL 1019337, at *2); *see also Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *3 (W.D. Pa. Oct. 22, 2019) (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009) and *Austin v. Pennsylvania Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995)) ("Next, the Court must assess whether the proposed settlement is fair and reasonable. In most cases, this standard is not exacting. Indeed, '"[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.' … "Only '[r]arely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'" … "'In determining the fairness of a proposed settlement, the Court should

attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.'"); *see id.* (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) ("'[C]ourts typically regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.'"); *In re Chickie's & Pete's Wage & Hour Litig.*, Docket No. 12-cv-6520, 2014 U.S. Dist. LEXIS 30366, *2 (E.D. Pa. Mar. 7, 2014); *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp.2d 464, 466 (E.D. Pa. 2012).

A proposed settlement resolves a "bona fide dispute" when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," rather than "a mere waiver of statutory rights brought about by an employer's overreaching," *Gabrielyan,* 2015 U.S. Dist. LEXIS 135615 at *3-4 (quoting *Lynn's Food*, 679 F.2d at 1354). When considering whether to approve a proposed settlement of an FLSA claim, a district court must determine that: (1) the settlement involves a bona fide dispute; (2) the settlement is fair and reasonable to the Plaintiff-employee; and (3) the settlement does not frustrate implementation of the FLSA in the workplace. *See Lyons*, 2015 U.S. Dist. LEXIS 92348, at *8; *Rogers*, 2021 WL 3619740, at *1 (citing *Davis v. Essex County*, Civ. A. No. 14-1122, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015)); *Gabrielyan,* 2015 U.S. Dist. LEXIS 135615 at *3-4 (quoting *Lynn's Food*, 679 F.2d at 1354) (Third Circuit considers: 1) whether the compromise is fair and reasonable to the employee, and 2) whether the compromise otherwise frustrates the implementation of the FLSA); *see also Singleton v. First Student Mgmt. LLC,* Docket No. 13-cv-1744, 2014 U.S. Dist. LEXIS 108247, *8 (D.N.J. Aug. 6, 2014); *In re Chickie's & Pete's Wage & Hour Litig.*, 2014 U.S. Dist. LEXIS 30366 at *2; Lynn's Food Stores, Inc., 679 F.2d at 1355.

Thus, in determining whether to approve a settlement for FLSA claims, the Court must engage in a three-part analysis. First, the Court must determine that the settlement concerns a bona fide dispute. Second, the Court must determine that the settlement is fair and reasonable to the Plaintiffs. Third, the Court must determine that the settlement does not frustrate the purpose of the FLSA. *Gabrielyan*, 2015 U.S. Dist. LEXIS 135615 at *4.

## II.     ARGUMENT

### A.     The Agreement Should be Approved Because it Resolves a Bona Fide Dispute

In this case, Plaintiffs contend that Defendant employed them as manual laborers in New Jersey and numerous other states across the United States. Plaintiffs allege that their duties primarily consisted of performing demolition and deconstruction services at various sites whereby Plaintiffs would remove furnishings and fixtures to prepare rental and commercial properties for use by Defendant's new tenants and clients. Defendant assigned Plaintiffs to work with a team of other manual laborers to perform their services. Plaintiffs, along with other team members, were assigned to work at sites in New Jersey, Pennsylvania, Delaware, Texas, Arizona, the District of Columbia, Florida, Louisiana, Massachusetts, Maryland, Maine, New Hampshire, and New York. Plaintiffs assert that their job duties remained the same regardless of which work site they were assigned to appear for work. Plaintiffs contend that Defendant regularly required them to work more than forty hours during most workweeks. Despite this, throughout their employment, Plaintiffs allege that

Defendant did not pay them at the statutorily required overtime rate of pay of one and one-half times their regular rates of pay for hours that they worked in excess of forty per week. Instead, Plaintiffs contend that Defendant paid them a fixed daily rate of pay for their hours worked, regardless of the number of hours worked. As a result, despite asserting that they frequently worked in excess of forty hours during their workweeks, Plaintiffs allege that Defendant failed to pay them at their proper overtime rate of pay for hours worked in excess of forty hours each workweek in violation of the FLSA, as well as under various state laws.

Critically, the parties have several key disputes that impact liability and damages. Defendant contends that Plaintiffs were paid correctly for all hours worked. Defendant also strenuously contests the number of hours worked by Plaintiffs each week, asserting that Plaintiffs worked fewer hours each week than alleged. Defendant also disputes the dates of employment for certain Plaintiffs. Defendant has provided certain documents reflecting Plaintiffs' compensation and hours worked that Defendant contends supports its defenses. Plaintiffs dispute these records. While Plaintiffs' counsel believes Plaintiffs' claims to be meritorious, counsel is experienced and realistic, and understands the evidentiary hurdles associated with proving hours worked that contradict a Defendant's alleged time records, especially where Plaintiffs lack their own separate, comprehensive recordkeeping for hours worked. Crucially, the resolution of this dispute substantially impacts the assessment of Plaintiffs' alleged damages. Additionally, Defendant argues that work performed by Plaintiffs outside of the state of New Jersey should be adjudicated in those localities where the work was performed. Plaintiffs vigorously contest this position and contend that all of Plaintiffs' work performed may be litigated in this forum, as long as each Plaintiff performed at least some work in New Jersey (which all Plaintiffs in this action did). The resolution of this legal dispute could significantly impact the scope of the claims and damages asserted by Plaintiffs in this lawsuit under the FLSA, as well as impact the amount of the available damages under state law as certain state laws at issue here provide for greater damages than the FLSA. Moreover, Defendant contends that Plaintiffs are not entitled to liquidated damages, whereas Plaintiffs assert that liquidated damages should be awarded because Defendant cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA. Thus, the parties have numerous major, bona fide disputes regarding liability and damages under the FLSA that are being resolved through this settlement.

  **B.** **The Agreement Should be Approved Because it is Fair and Reasonable**

    1. The Parties' Settlement is a Fair and Reasonable Resolution of Plaintiffs' Disputed Claims

With respect to this factor, Plaintiffs calculated their damages in order to assess their best possible recovery in this litigation. Making all reasonable assumptions in their favor, according to Plaintiffs' calculations, Plaintiffs' best potential recoveries under the FLSA at trial amount to $81,332.68 for unpaid FLSA wages and $81,332.68 for FLSA liquidated damages. Defendant contends that Plaintiffs are entitled to significantly less, even if they were successful at trial.

Moreover, settling at this stage allows the parties to avoid substantial costs and delays, and risks to establishing liability. Indeed, were a settlement not reached at this stage, the

LAW OFFICE OF PETER A. ROMERO PLLC  •  LABOR AND EMPLOYMENT LITIGATION
490 Wheeler Road, Suite 250, Hauppauge, New York 11788  •  (631) 257-5588  •  overtimelawny.com

parties would have completed formal written and document discovery, and depositions of Plaintiffs, Defendant, and likely several non-party witnesses. This settlement avoids potential motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiffs, even if they are successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn almost entirely upon the credibility of the parties and determining whether Defendant's records are accurate and, additionally, the resolution of certain legal arguments by Defendant regarding the scope of Plaintiffs' claims and damages that would likely be asserted during motions *in limine*, for a directed verdict or post-trial motions. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiffs were successful on their FLSA overtime wage claims, but Defendant could prove that they made a good faith effort to comply with the FLSA, Plaintiffs would not be entitled to liquidated damages under the FLSA, reducing Plaintiffs' available FLSA damages by half. If Defendant could establish that the alleged violations were not willful, Plaintiffs' FLSA claims would be subject to a two-year statute of limitations, which would further reduce the amount of available unpaid FLSA damages for most of the Plaintiffs. Thus, by settling at this stage, Plaintiffs ensure that they will receive a substantial recovery in this matter. Notwithstanding the significant risks discussed above, the settlement sum of $87,500.00 exceeds the amount of the FLSA underpayment allegedly due to the Plaintiffs and permits Plaintiffs to recover a substantial portion of their alleged unpaid FLSA overtime compensation, even after deducting for costs and attorneys' fees, clearly constituting a favorable settlement. Accordingly, Plaintiffs contend that the proposed settlement is fair and reasonable in light of the circumstances and the parties' bona fide disputes.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." *Bilbao v. LCS Enters. Inc.*, 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); *Rogers*, 2021 WL 3619740, at *1 (finding FLSA settlement fair and reasonable where settlement was "the product of arms-length negotiation between parties represented by competent counsel and assisted by a private mediator"); *Kapolka*, 2019 WL 5394751, at *3 ("Here, both parties are represented by experienced counsel who frequently litigate and settle FLSA and other employment law claims in both state and federal court. Additionally, the parties employed an experienced mediator to assist them in negotiating their settlement and reached their initial agreement to settle through the mediation process. The Court thus begins with a strong presumption that the settlement counsel have forged through extensive, adversarial negotiation is reasonable."); *see also Hernandez v. Anjost Corp.*, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator to resolve this matter. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

2. The Attorneys' Fees and Costs Permitted under the Parties' Settlement Should be Approved as Fair and Reasonable

The award of Attorney's fees to Plaintiffs' counsel is fair and reasonable considering the risk involved, the work performed, and the considerable result achieved. In this action, Plaintiffs' counsel respectfully requests the Court to approve attorneys' fees and costs in the amount of $32,210.00, consisting of $27,645.00 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $4,565.00 for litigation costs. In retaining Plaintiffs' counsel, Plaintiffs entered into a private contingent fee agreement, wherein Plaintiffs agreed that Plaintiffs' counsel would recover one-third (33.33%) of Plaintiffs' award, plus costs. The requested award is consistent with that agreement.

With respect to this request, "[f]ee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Aros v. United Rentals, Inc.*, Docket No. 3:10-cv-73, 2012 U.S. Dist. LEXIS 104429, at *13 (D. Conn. July 26, 2012) (quoting *Sand v. Greenberg*, 2010 U.S. Dist. LEXIS 1120, at *3 (S.D.N.Y. Jan. 7, 2010)); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (quoting Sand, 2010 WL 69359, at *3) ("Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'"); *Zeltser v. Merrill Lynch & Co.*, 2014 WL 4816134, at * (S.D.N.Y. Sept. 23, 2014) (quoting *Sand*, 2010 WL 69359, at *3; and citing *Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at *1 (S.D.N.Y. Aug. 16, 2011)) (same and "The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights."). In scrutinizing the fairness of FLSA settlements, and fees paid thereunder, Courts in this circuit have upheld greater contingency rates agreed upon between a plaintiff and their counsel as the appropriate contingency rate. *See Rhee v. Super King Sauna NJ, LLC*, 2021 WL 3550221, at *2 (D.N.J. Aug. 9, 2021) (approving plaintiff's attorneys' fees and costs that amounted to 62.5% of the settlement sum); *Adams v. Bayview Asset Mgmt., LLC*, Docket No. 13-cv-05967 (E.D. Pa. 2013) (Docket Nos. 7, 10, and 11) (Court approved a 40% contingency fee where that Plaintiffs' counsel was retained under a contingency fee agreement since the commencement of the representation); *Parks v. Creative Waste Solutions, LLC*, Docket No. 17-cv-02559 (E.D. Pa. 2017) (Docket No. 23) (Court approving 40% contingency fee for single-plaintiff FLSA case); *Parris v. Creative Waste Solutions, LLC*, Docket No. 17-cv-3093 (E.D. Pa. 2017) (Docket No. 20) (Court approving 38.17% contingency fee for single-plaintiff FLSA case). In the instant case, Plaintiffs' counsel is requesting a one-third contingency fee, which is a lower percentage than those approved in the aforementioned cases and which is an amount routinely approved by courts. *See also Morales v. The Unique Beginning Caterers Limited Liability Company*, 2021 WL 5864061, at *3 (D.N.J. Dec. 10, 2021) (citing *In re Chickie's & Pete's*, 2014 WL 911718, at *4; and *Brumley*, 2012 WL 1019337, at *12) (noting "Under the percentage-of-recovery method, courts award attorneys' fees as a percentage of the total fund recovered. While fee awards have ranged from nineteen (19) percent to forty-five (45) percent of a total settlement in the Third Circuit, fee awards around thirty (30) percent are routinely found reasonable." and, consistent with that law, found that plaintiff's "request for one-third, or 33.3 percent, is reasonable"); *Wood v. Saroj & Manju Invs. Philadelphia LLC*, 2021 WL 1945809, at *11 (E.D. Pa. May 14, 2021) (quoting *In re Prudential Ins. Co. Am. Sales*

*Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998); citing *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 770 (E.D. Pa. 2016)) (approving counsel's fee of one-third of the settlement amount and noting "[i]n the Third Circuit, courts generally favor using the percentage-of-recovery method to compensate counsel in wage-and-hour cases brought under the FLSA or state wage and hour laws as a collective or class action. This is because the percentage-of-recovery method, as opposed to compensating attorneys for the number of hours they devote to a case, encourages efficiency and 'rewards counsel for success and penalizes it for failure.'"); *Maddy v. Gen. Elec. Co.*, 2017 WL 2780741, at *6-8 (D.N.J. June 26, 2017) (approving counsel's fee of one-third of the settlement amount, noting that counsel litigated the case on a contingency fee basis and undertook the risk that counsel may not receive any recovery); *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773 (E.D. Pa. 2016) (recognizing that fee awards for common fund cases generally range from 20-45% of the fund and approving a fee award equivalent to 32.4% of the single-plaintiff fund); *Brumley*, 2012 WL 1019337, at *12 (citing *Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 82 (3d Cir. 1995); and *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011); and citing several cases approving fee awards of one-third of the settlement amount) ("The Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees. Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases. The attorneys' fees request of one-third of the settlement fund also comports with privately negotiated contingent fees negotiated on the open market."). Similarly, courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Accordingly, Plaintiffs' counsel's requested fees of $27,645.00 for attorneys' fees consisting of one-third of the net settlement amount is well within the range routinely approved by courts and reasonable.

Plaintiffs' counsel also seeks reimbursement of litigation costs and expenses in the amount of $4,565.00. These costs and expenses consist of ordinary and necessary litigation expenses, including $400.00 for the filing fee for the Complaint, $120.00 for service of process for the Summons and Complaint, and $4,045.00 for the mediator's fees and expenses. Copies of available invoices are annexed as Exhibit B.

      C.      **The Agreement Should be Approved Because its Terms Do Not Frustrate the Purposes of FLSA**

The Agreement does not frustrate the implementation of the FLSA in the workplace because the release provision of the parties' FLSA Settlement Agreement are properly limited. *See Schwartz v. Pennsylvania State Univ.*, Docket No. 4:15-cv-02176, 2017 WL 1386251, at *3 (M.D. Pa. Apr. 18, 2017) (indicating that scope of release and confidentiality provisions are proper considerations for this prong, citing cases). The release of claims in the parties' Agreement is limited to Plaintiffs' wage and hours claims asserted in this lawsuit or that could be asserted, including those claims under the FLSA and the state equivalents under New Jersey law and other state laws where the Plaintiffs performed work during the period of this lawsuit (which were either pleaded in the Complaint or would have been added through

an amended Complaint had the matter not been resolved). *See* Exhibit A. Such a narrowly-tailored release does not frustrate implementation of the FLSA. *See Carney v. Travelers Aid Soc'y of Philadelphia*, Docket No. 19-cv-3599, 2020 WL 703684, at *4-5 (E.D. Pa. Feb. 11, 2020) ("Additionally, the remainder of the settlement agreement does not frustrate the implementation of the FLSA. The release language of the settlement agreement, located in paragraph four, is limited and does not exceed the legal or factual basis of Plaintiff's complaint."); *Southwood v. Milestone Mgmt. PA-Feasterville, LLC*, Docket No. 19-cv-2569, 2020 WL 5554396, at *4 (E.D. Pa. Sept. 15, 2020) (approving release of claims that was "limited to claims that were raised or could have been raised in this lawsuit and wage-and-hour-related claims"); *Bettger v. Crossmark, Inc.*, Docket No. 13-cv-2030, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015) (noting that district courts generally require FLSA settlements to limit release provisions to "claims related to the specific litigation"; citing cases); *Kutz v. Cargill Cocoa & Chocolate, Inc.*, Docket No. 3:19-cv-0176, 2019 WL 5457776, at *8 (M.D. Pa. Oct. 23, 2019) (approving release "limited to the release and discharge of claims asserted in the lawsuit or claims that could have been asserted in this lawsuit"); *Crevatas v. Smith Mgmt. and Consulting, LLC*, Docket No. 3:15-cv-2307, 2017 WL 1078174, at *4 (M.D. Pa. Mar. 22, 2017) (approving release because it was "limited to wage and hour claims and remains within the scope of this lawsuit").

   The parties' Agreement does include a limited non-publicity clause that is permissible under the FLSA. Specifically, the clause states Plaintiffs agree not to publicize or contact the media, or to make any kind of statement regarding the terms of this settlement in any electronic format, or disclose any information about the negotiations process, other than for purposes related to effectuating the Settlement between the parties. This clause does not prevent Plaintiffs from speaking about their claims or from speaking with other employees of Defendant regarding their employment or claims. As such, this clause is permissible as part of an FLSA settlement agreement and does not frustrate the purposes of the FLSA. *Carney v. Travelers Aid Soc'y of Philadelphia*, Docket No. 19-cv-03599, 2020 WL 703684, at *4-5 (E.D. Pa. Feb. 11, 2020) (collecting cases) (approving non-publicity clause as part of FLSA settlement agreement and noting "[i]mplementation of the confidentiality clause would not frustrate the purposes of the FLSA because the clause only bars Plaintiff from discussing the settlement with the press – she is not barred from discussing the lawsuit with the employees of Defendant."); *Southwood*, 2020 WL 5554396, at *4 (approving non-publicity clause as part of FLSA settlement agreement and noting such clauses are permissible where the clause limits disclosures to the press and public-facing media and where all of the filings in this case remain publicly available); *Atis v. Freedom Mortg. Corp.*, Docket No. 15-cv-03424 (RBK/JS), 2018 WL 5801544, at *4 (D.N.J. Nov. 6, 2018) (citing *In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *3) (approving non-publicity clause as part of FLSA settlement agreement); *DiFlavis v. Choice Hotels Int'l, Inc.*, Docket No. 18-cv-3914, 2020 WL 6728806, at *7 (E.D. Pa. Nov. 16, 2020) (quoting *McGee v. Ann's Choice, Inc.*, Docket No. 12-cv-02664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014); and citing *In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *3) (approving non-publicity clause as part of FLSA settlement agreement and noting courts have approved such clauses as "'reasonable' where plaintiffs were 'free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media'" and that a settlement agreement does not frustrate the FLSA's implementation where the all filings in the lawsuit remain publicly available); *Rogers*, 2021 WL 3619740, at *2 (collecting cases) (approving confidentiality clause that Court interpreted as a non-publicity clause and where the settlement agreement was filed on

the public docket). Thus, the parties' limited non-publicity clause does not frustrate the purposes of the FLSA.

For the foregoing reasons, the parties' settlement does not frustrate the implementation of the FLSA.

### III.  CONCLUSION

Accordingly, because the Agreement represents a fair and reasonable resolution of a bona fide dispute over FLSA provisions without frustrating the purposes of the FLSA, the Court should approve the parties' Agreement and dismiss this action with prejudice.

Respectfully submitted,

*David Barnhorn*

_____
DAVID D. BARNHORN, ESQ.

C:   All Counsel of Record *via* ECF